*1111 OPINION.
Love:
In an eifort to establish the value of the Manhattan property at March 1, 1913, petitioner introduced as witnesses various real estate men, who had dealt in properties of this character in Toledo, Ohio, and in the section of the city in which the Manhattan Building is located. None of these witnesses had actually made an appraisal of the Manhattan property in 1913, but were expressing their opinion at the present time of what the value of the property was in 1913. This testimony, then, is retrospective in its *1112 nature and is subject to the weaknesses of that type of appraisal. The values expressed are as follows:
[[Image here]]
Another witness, George Valney Bhines, architect, made a retrospective appraisal of the building, which represented the reconstructive cost new at March 1, 1913, less depreciation up to that date. The intrinsic value of the building determined by him as at March 1, 1913, was $106,341.60.
The petitioner also relies upon the assessed value of the land and building at March 1, 1913, to establish the value of the property. This assessed value which is claimed represented 60 per cent of the full value, amounted to $128,800, which was allocated land, $73,800; building, $55,000. On the basis of 60 per cent, this would represent a value of land of $123,000 and of the building, $91,666.67. Charles J. Sanzenbacher, auditor of Lucas County, Ohio, in 1913, testified as to the method used by the board of review in arriving at the values of buildings for tax purposes in 1913, as follows: “ They had some kind of tables there, a certain class of building, and they would get the size of it and it would cost so much per cube to build a building of that kind, and they would figure it up — ‘ Well it would cost $10,000 to build this building we will put it down for $6,000 for taxation.’ ” Later in his testimony he emphasized the fact that the board of review determined what it would actually cost to replace the building and took 60 per cent of such cost as the assessed value.
Mr. Davies, who placed a value of $115,000 upon the building at March 1, 1913, testified that it was his belief that the building cost about $140,000 in 1903 or 1904, whereas, its actual cost was only about $85,000.
Walbridge, who placed a value of $115,000 on the building at March 1, 1913, placed such value in the belief that it would cost $115,000 to build a new building of this type on that date.
The values placed upon the building by petitioner’s witnesses were shown to be purely opinion valuations unsupported by any evidence as to fair market value. The reconstructive value new at March 1, 1913, less depreciation, as determined by the architect is the only value which resulted from an investigation sufficiently thorough to have much weight as evidence. This value does not purport to be *1113 a fair market value, and, therefore, can not be accepted as conclusive in determining this issue, see Strong, Hewat & Co., 3 B. T. A. 1035; Tibbey-Brawner Glass Co., 2 B. T. A. 918.
The value of a building is dependent upon many factors and an opinion as to the value of a building is not to be lightly expressed, nor is such opinion entitled to much weight unless it is shown that all factors relating to the value of a building have been considered. One of the elements entering into the valuation of a building which none of the witnesses appear to have taken into consideration is the earning power of the building. It is shown by the record that the annual net income from the building before making any allowance for depreciation reached a maximum of $5,699.08 prior to 1913, and from 1908 to 1913, inclusive, resulted in an average of only about $5,000. Any prospective purchaser would naturally take into consideration the earning power of the property he proposed to purchase. If we assume that 5 per cent would be a minimum return upon the investment, and that 2 per cent was a reasonable depreciation rate as of 1913, the $5,000 would represent a 7 per cent return on only $71,000. There has been nothing introduced in the record to indicate that a greater return from the building could be anticipated or that the building was not earning at March 1, 1913, as much as could consistently be derived therefrom. It was an up-to-date building occupying the proper proportion of the real estate, suitable for the purpose for which it was erected, and of a pleasing appearance. It appears to have been completely rented for at least a portion of the years prior to 1913 at rentals that must be assumed to be adequate.
After a review of all of the facts relating to the building and the testimony of the witnesses, we are of the opinion that the value at •March 1, 1913, to be used as a basis for depreciation, and for profit on the sale in 1921, was $80,000, which includes the value of the entire sprinkler system. This value, should be reduced by depreciation from March 1, 1913, to January 1, 1921, in the determination of the profit on the sale in 1921. The items claimed as additions in 1914, from the evidence submitted, seem to be more of a temporary character, properly chargeable, to expense rather than to capital.
The petitioner’s witnesses testified that the fair rate of depreciation based upon the reconstructive cost was 1 ½ per cent which would indicate a life of about 67 years as of 1903 or 1904. This would leave a remaining life at March 1, 1913, of about 59 years. The respondent has determined a depreciation rate to be applied to the March 1, 1913, value of 2 per cent. This rate appears to us to be reasonable and is not overcome by the testimony of the petitioner’s witnesses.
*1114 The valuation of lands is different from that of buildings. Practically no two buildings are alike, and, consequently, the sale of one building is not evidence as to the value of another. Lands are valuable because of their location, and their value can be obtained by comparison with sales of other lands. The petitioner’s witnesses have shown a familiarity with the value of lands in 1913 in the neighborhood of the Manhattan property, and have cited sales to support their opinions. They compared the lands sold with the petitioner’s land, and thus established a basis for valuing the petitioner’s land.
We have carefully reviewed the testimony of these witnesses and' are of the opinion that the evidence introduced is sufficient to prove a value at March 1, 1913, of $96,000 for the land upon which the Manhattan Building is located.
The determination of whether or not the entire $15,000 received by Thomas H. Tracy in 1921 was taxable as a dividend, is, according to the stipulation of the parties, dependent upon the computation resulting from the findings in the case of the Huron Building Co.

Judgment will be entered in both cases under Rule 50.